ELLEN V. FERRELLI, *Adm'x, vs.* W. J. HALLORAN CO.

APRIL 20, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J. This action of trespass on the case for negligence was brought to recover damages resulting from an accident suffered by plaintiff's intestate by reason of the alleged negligence of the defendant's agents and servants. Prior to the trial the plaintiff was substituted as party plaintiff in her capacity as administratrix of the estate of her late father Michael Bailey. The case was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the defendant. It is before us solely on the plaintiff's exception to the denial of her motion for a new trial. Hereinafter plaintiff's intestate will be referred to as Bailey.

On April 26, 1949 Gilbane Building Company was constructing a dormitory for St. Mary's Academy in the city of East Providence. Located on the ground was a mobile crane owned and operated by defendant and rented by Gilbane Building Company for the specific purpose of raising bricks and other material to the upper stories of the building. John E. Adams, an operator, and William J. Duggan, an oiler, were in charge of the crane and were employees of defendant. Bailey, the signalman or tagman, was an employee of Gilbane Building Company. He was standing on a staging at about the third story of the building. A scale box, so called, containing bricks was raised from the ground by the crane and when approximately ten feet above Bailey it struck a 4 by 4 upright causing bricks to be spilled, one or more of which struck Bailey. He was not knocked unconscious but was dazed, and was taken to the hospital. The diagnosis made there was laceration of scalp, congestion of brain and contusion of neck muscles, and he was discharged on May 9, 1949. He received workmen's compensation and did not work again. He died on January 11, 1955 from causes wholly unconnected with the accident. Therefore the trial justice and the other participants did not have the advantage of seeing and hearing Bailey at the trial of the case in March 1958.

The plaintiff's contention is that the accident resulted

from the negligence of Adams who was the operator of the crane. Willis M. Whitney, an adjuster for the insurance carrier of Bailey's employer, after talking with Bailey at his home on the day following his discharge from the hospital, wrote out a statement which was signed by Bailey. This was introduced at the trial as an exhibit. In the statement Bailey said that the crane was located at the southerly end of the dormitory; that Gilbane's laborers filled the scale box with bricks and would then signal to him on the staging; that he in turn would signal Adams, the crane operator, to hoist the box of bricks; and that about 11:30 a.m. as Adams was hoisting the box at his signal and as it neared the stage where he was standing he signaled Adams "to hoist up and boom-out away from the building to avoid hitting the stage. As he boomed out the box hit the upright for a stage at the 4th floor. This caused the box to tip over and the load of bricks fell on me."

John E. Adams, who was called as a witness by the defendant, testified that he had been a hoisting engineer for about twenty-two years; that the boom on his crane was approximately 80 feet in height; that Bailey, who was assigned to give him the necessary signals, was on the staging and in his view at times; that immediately prior to the time when the bricks fell he was following his signals; and that because it was necessary to raise the box to a height which was beyond his power to see he would take his signals from the signalman.

Upon interrogation by counsel, Adams testified as follows: "Q. What were you doing just before these bricks fell? A. Well, I was executing the operation of bringing the bucket over the scaffolding, over the staging, and I was executing that movement at that time. That's just prior to the bricks falling. Q. What, if anything, did Mr. Bailey's signals have to do with what you were doing? A. Well, it had all to do with what I was doing. Q. Were you doing what he had signalled you to do? A. Oh, yes."

Adams further testified that the signals used on the job were universal and in use all over the country. He testified further that when the bucket was loaded with bricks he raised it and swung it over toward the building; that he then took his signals from Bailey; that the latter gave him the signal to lower very slowly, which he did; that he then gave the signal to stop, and he did so; that the next signal was to boom very slowly, which he did; and that he could not see the bucket before he boomed out. Adams also testified that he saw the bucket clear the top of the scaffolding, which was the last time he saw the bucket before it landed, and that at the signal from Bailey he came down slowly.

The jury deliberated from 12:55 p.m. until 6:10 p.m. before returning a verdict for the defendant. During that time they returned to the courtroom and asked that Adams' testimony be read to them. This was read in its entirety by the stenographer. In addition to the general verdict the jury found specially that Bailey signaled the operator to boom out and that at such signal the operator did boom out. What actuated the jury in finding for the defendant we cannot say. Under the charge of the trial justice and upon the evidence, the jury could have found that the evidence did not preponderate for the plaintiff or they could have concluded that the accident was due to the negligence of Bailey himself as the signalman. The testimony was that Adams was an experienced crane operator. There was no specific evidence as to Bailey's experience as a signalman. He had spent many years as an ironworker and it is reasonable to assume that at times he had acted as a signalman.

After careful consideration of all the evidence we cannot say that the trial justice was clearly wrong in denying the plaintiff's motion for a new trial. Indeed, it was the only decision that he could properly make upon the evidence and the verdict that was rendered.

The plaintiff's exception is overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Aram A. Arabian,* for plaintiff.

*Carroll & Dwyer, John G. Carroll, Joseph G. Miller,* for defendant.